UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROKO JUNCAJ, et al.,

       Petitioners,                      Hon. Paul L. Maloney

v.                                              Case No. 1:08-CV-425

VINCENT CLAUSEN, et al.,

       Respondents.
_____/

### REPORT AND RECOMMENDATION

       This matter is before the Court on the Juncajs' <u>Petition for Writ of Habeas Corpus and Immediate Release from Custody</u>, (dkt. #1), and <u>Petitioners' Motion for Summary Judgment</u>, (dkt. #4). In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of petitions for writ of habeas corpus, the undersigned recommends that Petitioners' petition for writ of habeas corpus and motion for summary judgment be **denied**.

### BACKGROUND

       On May 5, 2008, Petitioners initiated the present action seeking habeas relief. (Dkt. #1). The following allegations are contained in their petition.

       Petitioner Roko Juncaj ("Roko") is a citizen of Yugoslavia who was lawfully admitted to the United States as a nonimmigrant visitor on August 13, 1996. Roko was granted

1

asylee status on June 26, 1997. Petitioner Ljena Juncaj ("Ljena"), a citizen of Yugoslavia and wife of Roko, was lawfully admitted to the United States as an asylee on October 14, 1998. Petitioners Toma Juncaj ("Toma") and Anton Juncaj ("Anton"), both citizens of Yugoslavia and sons of Roko and Ljena, were lawfully admitted to the United States as asylees on October 14, 1998.

On May 16, 2001, the United States terminated Roko's asylee status, as well as the derivative asylee status of Ljena, Toma, and Anton. Petitioners challenged this determination. On August 25, 2005, an Immigration Judge ordered Petitioners removed from the United States. Petitioners appealed the matter to the Board of Immigration Appeals (BIA), which affirmed the Immigration Judge's decision on March 29, 2007. Petitioners thereafter sought review of this determination in the Court of Appeals for the Sixth Circuit. On September 18, 2007, officials with Immigration and Customs Enforcement (ICE) detained Petitioners. The following day, the Sixth Circuit issued an order staying Petitioners' removal from the United States, pending resolution of Petitioners' appeal. Petitioners have been in ICE custody since September 18, 2007.

Petitioners initiated the present action in this Court not to challenge the determination that they are subject to removal from the United States, as that matter is presently before the Sixth Circuit. Rather, Petitioners initiated the present action to challenge their detention pending resolution of their appeal in the Sixth Circuit. On August 5, 2008, Petitioners filed the present motion for summary judgment in which they request that this Court "order their release from custody on the appropriate conditions or direct Respondent to provide them with an individualized bond hearing before an Immigration Judge." Respondents oppose Petitioners' motion.

**STANDARD OF REVIEW**

Petitioners seek relief under 28 U.S.C. § 2241, which provides that habeas corpus relief may extend to any person "in custody in violation of the Constitution or laws or treaties of the United States." While the federal district courts lack jurisdiction to resolve certain immigration-related issues, *see*, *e.g.*, 8 U.S.C. § 1252, the federal district courts have jurisdiction to resolve petitions for writ of habeas corpus filed under § 2241 by aliens asserting "claims arising out of immigration detention." *See Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)).

Petitioners have moved for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine

issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

To determine whether Petitioners' continued detention merits relief, the Court must first identify the legal basis for Petitioners' detention. Respondents assert that the Attorney General

enjoys "continued authority" to detain Petitioners, at his discretion, pursuant to 8 U.S.C. § 1231(a)(1)(C). Petitioners counter that Respondents' authority to detain them derives from 8 U.S.C. § 1226(a), which authorizes, but does not require, their detention "pending a decision on whether [they are] to be removed from the United States."

Pursuant to 8 U.S.C. § 1231, when an alien is "ordered removed," the Attorney General is required to remove the alien from the United States "within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). The "removal period" begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

This provision provides that "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). This statute also provides that:

> (C) Suspension of period
>
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(c).

5

Respondents assert that by seeking judicial review in the Sixth Circuit of the BIA's decision, Petitioners have acted to prevent their removal, thus triggering § 1231(a)(1)(C). Noting that this particular provision states that the Attorney General "may" detain an alien who "acts to prevent [his] removal," Respondents assert that "the Government has discretionary authority to continue the Petitioners' detention." Petitioners, as noted above, dispute the applicability of these particular provisions and instead assert that their detention is governed by a different statutory provision. The parties have not identified any controlling authority which resolves this dispute. Respondents have identified two cases in support of their position, both of which are inapposite. On the other hand, Petitioners have identified authority that directly and persuasively resolves this preliminary issue.

In *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), an Immigration Judge ordered Jose Prieto-Romero removed from the United States. *Id.* at 1056. Prieto-Romero appealed this determination to the BIA, which affirmed the Immigration Judge's decision. Prieto-Romero appealed the matter to the Ninth Circuit which entered a stay of removal pending its resolution of Prieto-Romero's appeal. Prieto-Romero was detained pending resolution of his appeal. Soon thereafter, Prieto-Romero petitioned for habeas relief in the United States District Court for the Western District of Washington. *Id.* The district court denied relief and Prieto-Romero appealed the matter to the Ninth Circuit. *Id.* at 1057. The Attorney General argued before the Ninth Circuit that Prieto-Romero was subject to detention pursuant to 8 U.S.C. § 1231(a). *Id.* at 1057-59. Prieto-Romero argued that the authority to detain him derived instead from 8 U.S.C. § 1226(a). *Id.*

As noted above, during the "removal period, the Attorney General shall detain the alien." The "removal period" may be suspended if the alien "acts to prevent [his] removal" and,

furthermore, the alien "may" be detained during any such suspension of the removal period. In the *Prieto-Romero* case, just as in the present matter, the government argued that because Prieto-Romero acted to prevent his removal by seeking judicial review of the BIA's decision, the removal period had been suspended permitting the Attorney General to detain Prieto-Romero at his discretion. *Id.* at 1057-60. The Ninth Circuit rejected this argument.

Noting that the removal period begins on the *latest* of several events, one of which is "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," the court concluded that:

> The statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal. Because § 1231(a) authorizes detention only "[d]uring the removal period," § 1231(a)(2), and "beyond the removal period," § 1231(a)(6), it clearly does not provide any authority *before* the removal period. Therefore, the plain language of § 1231(a) provides no authority to detain aliens such as Prieto-Romero whose removal order is *administratively* - but not *judicially* - final.

*Prieto-Romero*, 534 F.3d at 1059-60 (internal citations and footnote omitted).

The Court also rejected the argument that by acting to prevent his removal, Prieto-Romero was subject to detention pursuant to 8 U.S.C. § 1231(a)(1)(C). As the court stated:

> The government also urges that § 1231(a)(1)(C), which "extend[s]" the "removal period" beyond its presumptive 90-day limit if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal," can be construed to authorize Prieto-Romero's detention. We disagree. Rather than functioning as an independent source of detention authority, § 1231(a)(1)(C) merely authorizes the government to *continue* detaining an alien "[d]uring the removal period." *See* § 1231(a)(2). Consequently, § 1231(a)(1)(C) cannot be invoked to justify the detention of an alien whose removal period has not yet begun.

7

> Moreover, we are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal." *See* § 1231(a)(1)(C). We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.

*Prieto-Romero*, 534 F.3d at 1060-61 (internal citations and footnote omitted).

The Ninth Circuit determined, therefore, that 8 U.S.C. § 1231(a) did not authorize the Attorney General to detain Prieto-Romero. *Prieto-Romero*, 534 F.3d at 1061-62. The court recognized, however, that the Attorney General possessed the authority, under 8 U.S.C. § 1226(a), to detain Prieto-Romero, "pending a decision on whether the alien is to be removed from the United States." *Prieto-Romero*, 534 F.3d at 1062.

On the question of the statutory authority for the continued detention of Petitioners in this matter, the Court finds the rationale articulated by the *Prieto-Romero* court persuasive. The Court concludes, therefore, that Respondents authority to detain Petitioners derives not from 8 U.S.C. § 1231, but instead from 8 U.S.C. § 1226. In support of their position on this question, Respondents rely on two cases: (1) *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002); and (2) *Fahim v. Ashcroft*, 227 F.Supp.2d 1359 (N.D. Ga. 2002). The Court finds this authority unpersuasive, as neither court was presented with (or addressed) the issue of which statutory provision authorizes the continued detention of aliens in the Juncajs' circumstance. Having determined the statutory basis for Respondents' continued detention of Petitioners, the Court must assess whether Petitioners are entitled to the relief they seek.

By its very terms, section 1226 authorizes the Attorney General to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §

1226(a). The statute provides that the Attorney General "may" release the alien on bond or conditional parole, but does not obligate him to do so. 8 U.S.C. § 1226(a)(2). Despite this statutory language, Petitioners assert that "regardless of the legal basis for [their] detention, their prolonged detention without an individualized custody hearing" violates their due process rights. (Dkt. #1 at 10). Petitioners assert that they are entitled to be released because there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* In support of their position, Petitioners rely on the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). This decision, however, does not support Petitioners' claim for relief.

In *Zadvydas*, the Court addressed the issue of how long the government may detain an alien (pursuant to 8 U.S.C § 1231) following the entry of a final order of removal. Specifically, the question before the *Zadvydas* Court was whether the Attorney General may detain a removable alien (i.e., an alien against whom a final order of removal has been entered) "*indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682.

The aliens in *Zadvydas* had been ordered removed by the United States government, a determination upheld on both administrative and judicial review. *Id.* at 684-86. While the aliens had exhausted all avenues of relief or review, the United States could not effect their removal because the countries in question either refused to accept the alien in question or were not party to a repatriation treaty with the United States. *Id.* Recognizing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Court interpreted the statute (8 U.S.C. § 1231) to contain an implicit "reasonable time" limitation. *Id.* at 682-90. Specifically, the Court determined that a 6-month period was presumptively reasonable. *Id.* at 701. The Court

further held that:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

That Petitioners in this case are being detained pursuant to 8 U.S.C. § 1226, rather that 8 U.S.C. § 1231, the provision at issue in *Zadvydas*, is of no significance. As the *Prieto-Romero* court observed:

> *Zadvydas* held that § 1231(a)(6) did not contain any clear "indication of congressional intent to grant the Attorney General the power" to indefinitely detain. It would be incongruous for us to conclude, in the absence of clear evidence, that Congress intended *other* detention statutes to authorize the indefinite detention of aliens, where such detention would clearly pose the same constitutional concerns. Therefore, without clear congressional direction to the contrary, we conclude that § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention.

*Prieto-Romero*, 534 F.3d at 1062-63 (internal citations and footnote omitted).

Accordingly, the Court concludes that Respondents' authority to detain Petitioners, under section 1226, is limited "to a period reasonably necessary to [remove Petitioners] from the United States." *Zadvydas*, 533 U.S. at 689; *see also*, *Prieto-Romero*, 534 F.3d at 1063; *Ly*, 351 F.3d at 267 ("*Zadvydas* establishes a specific rule: '[A] habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal'"). It must also be remembered,

however, that while "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. . .detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

As previously noted, while the aliens in *Zadvydas* had been adjudicated removable, the United States was unable to effectuate their removal. Thus, those particular aliens were found to exist in a "removable-but-unremovable limbo." *Jama v. Immigrations and Customs Enforcement*, 543 U.S. 335, 347 (2005); *see also*, *Prieto-Romero*, 534 F.3d at 1063. Given this circumstance, the Court concluded that the aliens' removal from the United States was not "reasonably foreseeable," thus raising a "serious constitutional problem." *Zadvydas*, 533 U.S. at 682-90.

The Sixth Circuit has likewise recognized that the prolonged detention of an alien whose removal from the United States is unlikely to occur raises constitutional problems. In *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003), the Sixth Circuit upheld the district court's decision to grant Ly's petition for writ of habeas corpus. The court first observed that "[a]ctual removal of Ly from the United States was never a possibility during this process[, as] Vietnam has not and does not accept deportees because there is no repatriation agreement between the Unites States and Vietnam." *Id.* at 265 n.1. The court then concluded that Ly's detention for 18 months pending a decision by the Immigration and Naturalization Service (INS) was unreasonable because "there was no chance of actual, final removal." *Id.* at 271.

Petitioners assert that they are entitled to relief because their removal "is not reasonably foreseeable." While the Court recognizes that Petitioners' status is presently uncertain, Petitioners have failed to demonstrate that their removal from the United States is "not reasonably foreseeable" as that concept was understood by the *Zadvydas* Court. Petitioners have presented no

evidence that, in the event they lose their appeal, the United States will be unable to remove them or that any attempts at removal are unlikely to be unsuccessful. In short, Petitioners have failed to demonstrate that they are subject to *indefinite* detention, the concern underlying the *Zadvydas* decision.[1] Again, the Court finds the rationale articulated by the *Prieto-Romero* court persuasive:

> Prieto-Romero foreseeably remains *capable* of being removed-even if it has not yet finally been determined that he *should be* removed-and so the government retains an interest in 'assuring [his] presence at removal.' His continued detention, while lengthy, is not indefinite. It remains authorized by § 1226(a) because it is consistent with the implicit limitation that *Zadvydas* requires us to read into the Attorney General's statutory detention authority. Other circuits have come to the same conclusion. We therefore hold that § 1226(a) permits Prieto-Romero's continuing detention while he pursues judicial review of his administratively final order of removal.

*Prieto-Romero*, 534 F.3d at 1065 (internal citations omitted).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that the Juncajs' Petition for Writ of Habeas Corpus and Immediate Release from Custody, (dkt. #1), and Petitioners' Motion for Summary Judgment, (dkt. #4), both be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

---

[1] The Court recognizes that it cannot be determined with certainty when the Sixth Circuit will resolve Petitioners' appeal. As the *Prieto-Romero* court recognized, however, there is a significant distinction between the administrative and judicial processes. While the administrative process can take several years and is not subject to any "established timeline," the judicial review process is subject to "procedural rules" that provide "satisfactory assurance" that a request for review "will be resolved with reasonable expedition." *Prieto-Romero*, 534 F.3d at 1064-65.

to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                          Respectfully submitted,

Date:  February 3, 2009                            /s/ Ellen S. Carmody
                                                                 ELLEN S. CARMODY
                                                                 United States Magistrate Judge